Robert O. Gilmore & others *vs.* City of Quincy.

Norfolk.    March 8, 1963. — May 3, 1963.

Present: Wilkins, C.J., Spalding, Whittemore, Cutter, & Kirk, JJ.

*Zoning,* Municipal property.

Nothing in the zoning enabling act, G. L. c. 40A, prevented a city from establishing a "City Property" zoning district in which all municipal uses were allowed. [24]

A provision of a city's zoning ordinance in effect allowing "Incineration" in industrial zoning districts if conducted under contract with the city would not preclude erection and operation of a municipal incinerator on land of the city located in a "City Property" zoning district in which all municipal uses were allowed. [24–25]

On the record, a city owning an eight acre parcel of abandoned quarry land located in a residence zoning district did not exceed its authority under the zoning enabling act, G. L. c. 40A, in changing the zoning of

the parcel to a "City Property" district, in which all municipal uses were allowed, in order that a municipal incinerator might be built and operated on the parcel.  [25]

BILL IN EQUITY filed in the Superior Court on December 11, 1961.

The suit was heard by *Gourdin, J.*

*Douglas A. Randall,* City Solicitor, for the defendant.

*Harry Pavan,* for the plaintiffs, submitted a brief.

WILKINS, C.J.  This bill by ninety-four citizens of the defendant city, resident in a Residence A or Residence B zone, seeks a binding declaration as to the validity of an ordinance which purports to rezone a parcel of 8.6954 acres of city owned land fronting on Quarry Street to permit the erection and maintenance of an incinerator.  G. L. c. 231A. From a final decree declaring the ordinance to be invalid and enjoining the proposed use, the defendant appealed. The judge voluntarily filed a document entitled "Findings of Fact and Order," which, upon request of the defendant, he adopted as a report of the material facts found by him. G. L. c. 214, § 23 (as amended through St. 1947, c. 365, § 2). The evidence is reported.

The judge's findings are extremely meager, and, except as otherwise stated, the facts necessary to our decision we ourselves find.

The eight acre parcel is part of an abandoned granite quarry presently used for the dumping of rubbish.  On June 7, 1943, the city council adopted a comprehensive zoning ordinance which divided the city into six classes of districts: Residence A, B, and C, Business, and Industrial A and B.  It was approved by the mayor on July 1, 1943. Made part of the ordinance was a map, entitled "Quincy Massachusetts Building Zone Map," which displayed a key showing small rectangles with differing markings plainly indicating the six classes of districts and a category of "city property."  This category, strangely enough, was not referred to elsewhere in the ordinance, and, lacking express restrictions, can only be treated as an unzoned area.  Nothing in the enabling act as it then stood, G. L. c. 40, §§ 25–30B,

"or in common sense requires a municipality to impose restrictions upon all of its territory as a condition of the exercise of its zoning powers." *Marblehead* v. *Rosenthal,* 316 Mass. 124, 125–126.

In 1949 the ordinance was amended and two new classes of districts, making eight in all, were added: Industrial A–1 and City Property. See Rev. Ord. of Quincy (1960) c. 24, § 3. The only other reference to City Property in the ordinance, as now amended, is in the section entitled, "Board of Appeals": "City property. All uses of property zoned city property other than municipal uses shall be subject to the approval of the board of appeals." *Id.* § 17 (f).[1]

The ordinance under attack, Order No. 278, was passed to be ordained by the city council on November 20, 1961, and was approved by the mayor on November 27, 1961. It purported to amend the Revised Ordinances of the city c. 24, § 3 (b),[2] and stated, "The Building Zone Map of Quincy, Mass. be and is hereby amended by changing from 'Residence B' to 'City Property' the following parcel of land." Here followed a description of the eight acre parcel by metes and bounds. This had the effect of removing all restrictions upon municipal uses of the parcel. "The Zoning Enabling Act," G. L. c. 40A, inserted by St. 1954, c. 368, § 2, has not changed the principle quoted *supra* from *Marblehead* v. *Rosenthal.*

The judge ruled that the zoning ordinance permits the erection and maintenance of an incinerator only in Industrial B zones. We assume that the basis of the ruling was c. 24, § 10.[3] The ruling was error. There is nothing in the

---

[1] We have not been informed when this section was enacted.

[2] The first sentence of c. 24, § 3 (b), is "The boundaries of the districts shall be the sidelines of streets, property or lot lines, or other lines shown on the map entitled 'Building Zone Map of Quincy, Massachusetts,' on file in the office of the inspector of buildings, which map is hereby adopted and made part of this chapter."

[3] "Within any industrial 'B' area no building or structure shall be used and no building or structure shall be erected to be used in whole or in part for any one of the following specified uses: . . . Incineration, reduction or dumping of offal, dead animals, garbage or refuse on a commercial basis, or loading and transfer platforms therefor, except where operated by or under contract with the municipality, and except for the purification of factory wastes."

provisions respecting Industrial B zones which requires such a result.

The judge also stated: ''It is irrelevant that the proposed incinerator site is ideally adapted for the purpose, which the court finds; that the citizens have voted for a municipal incinerator; that other sites are not as readily available; nor that part of the proposed site is currently used as a municipal dump. The sole question is whether the city has exceeded the authority given it under the enabling act. The court finds that it has.''

We cannot agree. There was nothing in the zoning enabling act which barred the amendment.

The defendant has urged that the plaintiffs have no standing to raise the question of the validity of the amendment under c. 231A. In their bill they allege that they have an interest in the subject matter because the purported ordinance seeks to erect an incinerator in a Residence B zone; that they ''all live in a Residence A or Residence B zone near and proximate to the locus which is the subject of said ordinance.'' The answer denied that they have a legal interest in the subject matter or that they live ''near and proximate to the locus.''

With this record, we shall not study the voluminous testimony and exhibits to ascertain where the ninety-four plaintiffs live or their relationship to the subject matter of the ordinance. Neither shall we endeavor to find facts on the issue of spot zoning sought to be raised by the plaintiffs. If these or other issues are still live issues, the case may be further heard in the Superior Court. Should the case come before us again we hope that the issues of fact will be covered by adequate findings.

*Decree reversed.*