## WILLIAM J. SPALKE *vs.* BOARD OF APPEALS OF PLYMOUTH.

Plymouth.   January 10, 1979. — May 30, 1979.

Present: KEVILLE, ROSE, & PERRETTA, JJ.

*Zoning*, Board of appeals: decision; Access to public way. *Way*, Public. *Words*, "Street."

The fact that a town's board of appeals granted a building permit for construction of a summer home on an island with no land access was irrelevant to a determination whether the board erred in previously refusing to grant a permit for construction of a summer home on a peninsula on the basis that the lot did not have frontage on or access to a street with adequate access to a public way as required by the town's zoning by-law. [686-687]

The denial of a building permit by a town's board of appeals was not nullified by the board's failure to render a decision within the sixty-day period prescribed by G. L. c. 40A, § 18, as in effect prior to St. 1975, c. 808, § 3. [687-688]

In an action challenging the denial of a building permit, there was no showing that a roadway usable only by four-wheel drive vehicles and located at the end of a peninsula was a street for purposes of a zoning by-law. [689-690]

In an action challenging the denial of a building permit, the plaintiff failed to show that his lot had adequate access to a public way approved by the planning board, as required by the town's zoning by-law, where there was no showing that the road on which the lot was located was ever accepted by the town as a public way and the planning board specifically found that the road did not provide adequate access and where there was no showing that the planning

board had approved the Atlantic Ocean as a public way for access purposes. [690-691]

The provisions of G. L. c. 40A, § 5A, as in effect prior to St. 1975, c. 808, § 3, did not exempt a lot from the operation of a zoning by-law with respect to access requirements. [691]

CIVIL ACTION commenced in the Superior Court on May 28, 1975.

The case was heard by *Fine, J.*, a District Court judge sitting under statutory authority.

*Robert L. Shea*, Town Counsel (*Leo D. Shea* with him) for the defendant.

*Joseph A. D'Agostino* for the plaintiff.

*Judith Pickett* for the Conservation Law Foundation of New England, Incorporated, amicus curiae, submitted a brief.

PERRETTA, J. The plaintiff, Spalke, is the "prospective owner"[1] of land upon which he wishes to build a summer cottage. The land in question (land or the lots) consists of two of approximately ten undeveloped lots at the bay tip of Saquish Peninsula in Plymouth. The peninsula is about seven miles long and extends from the mainland of the town of Duxbury into Plymouth Bay. Thus, the Saquish area of Plymouth is accessible from Plymouth center only by travelling across Plymouth Bay or through the town of Duxbury. Land access to the lots is by means of Landing Road, which runs the length of the peninsula and which may be travelled only by four-wheel drive vehicles. This road has been in use for at least thirty years.

On July 26, 1973, Plymouth adopted § 300.05 of its zoning by-law,[2] which requires that before any building or

---

[1] We note in passing that Spalke has described himself simply as the "prospective owner" of the land. If he had standing on this basis to request a building permit in the first instance, he qualifies as a "person aggrieved" by the board's decision under G. L. c. 40A, § 21, as in effect *prior to St. 1975, c. 808, § 3.* Cf. *Kuklinska* v. *Planning Bd. of Wakefield*, 357 Mass. 123, 129 (1970); *Waltham Motor Inn, Inc.* v. *La Cava*, 3 Mass. App. Ct. 210, 214-215 (1975).

[2] "*300.05 Buildings to Have Access*
Every land use for which a building or other permit is required shall

other permit can issue the lot subject to the application must have either frontage on and access to a street or some kind of access to a public way, the adequacy of which has been approved by the planning board. On June 24, 1974, Spalke filed with the Plymouth zoning administrator and building inspector a paper which was styled as an application for a "zoning permit" and in which he requested permission to erect a summer cottage on this land. We have been presented only § 300.05 of the by-law, and neither there nor anywhere in the record is the specific meaning of "zoning permit" set out. However, we have reviewed the application together with § 300.05, and we think it is clear that what Spalke sought was a building permit. The building inspector and zoning administrator denied the application because "in the opinion of the Plymouth Planning Board the lots on the ways in Saquish do not have the required frontage on or access to a street which has adequate access to a Public Way." Spalke appealed from this denial to the Plymouth zoning board of appeals (board), which affirmed the denial, finding that construction on the lots "would pose a hazard to vehicular access thereto because the only present methods of access . . . are by means of . . . especially equipped four-wheel drive vehicles, . . . boats, or . . . helicopters." It further found that construction in this area would increase the potential for sewage to become mixed with ground water and ocean water during periods of high tide.[3] Spalke appealed from this decision to the Superior Court

---

be on a lot having the required frontage on and access to a street or having adequate access to a public way approved by the Planning Board. No private street or driveway to commercial or industrial districts shall be permitted through residentially zoned or developed property."

[3] The sewage issue was not the subject of any ruling in the Superior Court, and it has not been argued in the parties' briefs. We deem it waived. Mass.R.A.P. 16(a) (4), as amended, 367 Mass. 921 (1975).

pursuant to G. L. c. 40A, § 21,[4] where a judge annulled the decision of the board. The board appeals from this judgment.[5] We reverse the judgment.

In the Superior Court Spalke presented numerous arguments: that the land was not a resubdivision as defined by G. L. c. 41, § 81L; that it qualified for the exemption of G. L. c. 41, § 81FF; that § 300.05 of the Plymouth by-law was not applicable to the lot because of the zoning exemption of G. L. c. 40A, § 5A; that the Atlantic Ocean was a public way for zoning and subdivision purposes; and that the board's decision was an arbitrary exercise of power because it did not decide his appeal within sixty days, as mandated by G. L. c. 40A, § 18. The judge did not reach any of those issues, ruling that none of them was central to a resolution of the matter because in light of "all of the circumstances of this case the decision to deny a zoning permit . . . in Saquish [had been] arbitrary and unreasonable." This determination was based on the fact that after the enactment of § 300.05 in 1973, and after the denial of Spalke's application for a building permit, the board had granted a building permit for construction of a summer home on Clarke's Island. This island is situated in Plymouth Bay and is also under the municipal jurisdiction of Plymouth.

We reach the issues raised by Spalke because the board's action as to Clarke's Island cannot be the determinative factor. Obviously, there is no land access to Clarke's Island, whereas Spalke's site is accessible by land. While it is appealing and indeed logical to conclude, as did the trial judge, that access to the Saquish lots is superior to that of the island because of the former's

---

[4] All references will be to the provisions of G. L. c. 40A, as in effect prior to St. 1975, c. 808, § 3, unless otherwise specifically indicated.

[5] A brief was submitted by the Conservation Law Foundation of New England, as amicus curiae, in which reversal of the judgment is urged because, among other reasons, as matter of public policy the Commonwealth's shoreline should be kept in its natural state.

connection to the mainland, we do not see this as a material comparison. General Laws c. 40A, § 12, is clear in its requirement that a building permit "shall" be withheld "if the building or structure as constructed . . . would be in violation of any zoning . . . by-law . . . ." We have nothing before us pertaining to Clarke's Island other than the bare fact of the issuance of a building permit. Further, there has been no showing that Clarke's Island was subject to the zoning by-law at the time the permit was granted. See *Marblehead* v. *Rosenthal*, 316 Mass. 124, 125-126 (1944) ("[n]othing in the statute . . . or in common sense requires a municipality to impose restrictions upon all of its territory as a condition of the exercise of its zoning powers"); *Granby* v. *Landry*, 341 Mass. 443, 445 (1960); *Gilmore* v. *Quincy*, 346 Mass. 22, 23-24 (1963). The only question before the trial judge was what the law required as to the lots in question on the basis of the facts presented. The Clarke's Island building permit is an irrelevancy, and we review the matter of Spalke's building permit application on its own footing.

Spalke's procedural argument that the board acted arbitrarily and unreasonably in not deciding his appeal within the sixty-day time period prescribed by G. L. c. 40A, § 18,[6] cannot prevail. Spalke filed his appeal with the board on July 3, 1974, a public hearing was held on August 6, 1974, and a decision was filed with the town clerk on May 13, 1975. Although Spalke argues that this delay is unreasonable, the sixty-day provision of § 18 has been consistently construed as a directory and not a mandatory provision of the statute. That is, the time provision was enacted for public convenience and not as a condition precedent to the validity of an official act. Noncompliance with that provision does not render an act by the board void. *Cullen* v. *Building Inspector of No. Attleborough*, 353 Mass. 671, 679-680 (1968), citing *Cheney* v.

---

[6] Spalke erroneously argues the board had ninety days in which to act. See St. 1969, c. 870, § 1.

*Coughlin,* 201 Mass. 204, 211 (1909). See *Scott* v. *Board of Appeal of Wellesley,* 356 Mass. 159, 162 (1969); *Crosby* v. *Board of Appeals of Weston,* 3 Mass. App. Ct. 713, 713-714 (1975). Compare *Casasanta* v. *Zoning Bd. of Appeals of Milford,* 377 Mass. 67 (1979). This section was subsequently replaced by the present G. L. c. 40A, § 15,[7] which extends the period within which a decision must be made by the board to seventy-five days, and mandates that a failure to comply results in an automatic granting of the relief sought from the board. As noted in *Casasanta,* 377 Mass. at 69 n.3, "There have been suggestions in the cases that where delay was excessive and unjustified or prejudice could be shown § 18 might be read in a more drastic way," citing *Burwick* v. *Zoning Bd. of Appeals of Worcester,* 1 Mass. App. Ct. 739, 745 (1974). However, the record before us gives no indication that the delay was unjustified or, more important, that Spalke "ha[s] been prejudiced in any respect by the board's failure to comply with any of the provisions of § 18 . . . ." *Burwick, supra* at 745.

Turning now to the substantive issues of the appeal, we note from the outset that we view this matter as one arising under The Zoning Enabling Act, G. L. c. 40A, and the Plymouth zoning by-law, § 300.05. At every level of these proceedings the parties have mixed the concepts of zoning regulation under c. 40A, with those of subdivision control under G. L. c. 41, §§ 81K-81GG. The record clearly shows that Spalke applied for a building permit. The zoning by-law provides that such permits can be issued only for lots having "the required frontage on and access to a street" or, in the alternative, "having adequate access to a public way approved by the Planning Board." The board found that under *both* the zoning by-law and § 81M of the Subdivision Control Law, the lots did not have the required frontage and access. Although both The Zoning Enabling Act and the Subdivision Control Law allow the regulation of building construction on the basis of front-

_____

[7] As appearing in St. 1975, c. 808, § 3.

age and access, see G. L. c. 40A, §§ 3, 12; G. L. c. 41, § 81M, Spalke was, at this time, seeking only a building permit.[8] The sole issue raised by his request was whether the building would be in violation of § 300.05; that is, whether Landing Road or the Atlantic Ocean provide the lots with the characteristics necessary to satisfy § 300.05 and thereby entitle him to a building permit.

The first alternative available to Spalke under § 300.05 was to show that the lots had "the required frontage on and access to a street." By this very phrase, if Landing Road was not a street then Spalke's arguments concerning frontage thereon and access thereto are irrelevant. We are unable on this record to hold that Landing Road, a roadway usable only by four-wheel drive vehicles, is a "street." We have not been presented anything to show that the word "street" denotes something in the by-law other than its ordinary meaning, and we deem it to be employed in its usual sense. Compare *Gem Properties, Inc.* v. *Board of Appeals of Milton,* 341 Mass. 99, 102 (1960). In the absence of such a showing to the contrary, cases have interpreted "street" to mean an accepted highway or town way. *Commonwealth* v. *Boston,* 16 Pick. 442, 445 (1835). *Commonwealth* v. *Boston Barre & Gardner R.R.,* 135 Mass. 550, 551 (1883). *Siegemund* v. *Building Commr. of Boston,* 259 Mass. 329, 333 (1927). The record offers no showing that Landing Road had been accepted

---

[8] Were we to regard the Subdivision Control Law as applicable we would conclude that Spalke is not exempted on the basis of the only exception that he could urge under § 81L, because we reject his contention that the Atlantic Ocean, upon which the lots front, is a public way. On the other hand, § 81FF, as appearing in St. 1953, c. 674, § 7, would exempt the lots if they were ones "which had been sold and were held in ownership separate from that of the remainder of the subdivision when said law went into effect . . . ." The Subdivision Control Law became effective in Plymouth July 5, 1951. The lots are shown on a plan, dated 1914, which was recorded in the registry of deeds. On July 5, 1951, the lots were held by the same owner; in 1969, they were conveyed into separate ownership. Consequently, under §§ 81L and 81FF, the lots are subject to the Subdivision Control Law. See *Toothaker* v. *Planning Board of Billerica,* 346 Mass. 436, 439 (1963).

by the town. Cf. *Commonwealth* v. *Thompson,* 12 Met. 231, 232 (1847); *Casagrande* v. *Town Clerk of Harvard,* 377 Mass. 703, 706 (1979); *W.D. Cowls, Inc.* v. *Woicekoski, ante* 18, 19-20 (1979); *Fenn* v. *Middleborough, ante* 80, 84-85 (1979). We do not attempt to define the word "street" in a land use control context; we hold only that this four-wheel drive roadway (at the end of a seven-mile peninsula) which is not shown to have been accepted by the municipality, is not a street. Compare *Jenckes* v. *Building Commr. of Brookline,* 341 Mass. 162, 164-166 (1960).

Reaching the second alternative under § 300.05, whether the lots have "adequate access to a public way approved by the Planning Board," we conclude that Spalke cannot prevail no matter how we view Landing Road. Spalke has not shown that Landing Road was ever accepted by Plymouth as a public way. In addition, the planning board specifically found that the road did not provide adequate access to the lots from a public way. See *Lucianelli* v. *Newton,* 288 Mass. 535, 536 (1934); *Casagrande, supra* at 706; *W.D. Cowls, Inc., supra* at 19-20; *Fenn, supra* at 84-87.

Additionally, Spalke has expended great effort in arguing that the Atlantic Ocean is a public way for access purposes under the by-law.[9] We reject this assertion. Cases have been brought to our attention concerning the ocean as a public way, but they are inapposite to the by-law in question because they deal with the use of navigable waters for commerce or pleasure. See e.g., *Commonwealth* v. *Charlestown,* 1 Pick. 180, 182 (1822); *Charlestown* v. *County Commr. of Middlesex,* 3 Met. 202, 203 (1841); *Attorney General* v. *Woods,* 108 Mass. 436, 439-440 (1871). Even were we inclined to view the Atlantic Ocean

[9] We are aware that this consideration is also applicable to Clarke's Island. But, as we emphasized earlier, the record is barren of any information concerning zoning regulation of that portion of Plymouth.

as a public way for access purposes, we note, again, that the record offers no showing of planning board approval.

Having concluded that the lots do not comply with either of the alternatives under § 300.05, we reach Spalke's final contention, that the lots are exempt from the operation of the by-law under G. L. c. 40A, § 5A. This provision protects lots shown on an appropriately recorded plan from subsequently enacted zoning amendments which increase the necessary area, frontage, width, depth, or yard requirements. *Perry* v. *Building Inspector of Nantucket,* 4 Mass. App. Ct. 467, 473-474 (1976). In holding that § 5A is of no assistance to Spalke, we need only note that it does not deal with access requirements. Therefore, even were it applicable as to frontage, Spalke would still not be entitled to a building permit because of insufficient access.

The judgment is reversed, and a new judgment is to enter declaring that the decision of the board was not in excess of its authority.

*So ordered.*