Clows v. Planning Board of Middleton.

LOUIS G. CLOWS & another[1] vs. PLANNING
BOARD OF MIDDLETON.

Essex. April 13, 1981. — June 23, 1981.

Present: BROWN, DREBEN, & KASS, JJ.

*Subdivision Control*, Exemption.

A judgment entered in the Superior Court ordering a town's planning
board to exempt certain lots from subdivision control under the pro-
visions of G. L. c. 41, § 81FF, which was based on a stipulation that
the "lots had been sold and were held in ownership separate from that
of the remainder of the subdivision shown on the plan on the date
when [subdivision control] went into effect in the town," was reversed
and the case was remanded to the Superior Court for inquiry into
whether, on the date when subdivision control went into effect, the
lots were owned in isolation from the original subdivision or were part
of a larger tract remaining from the original subdivision and, if the lat-
ter, whether the road the lots fronted on had the status of a way within
the meaning of c. 41, § 81L. [130-133]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 27, 1979.

The case was heard by *Bennett*, J.

*Jerome A. Segal*, Town Counsel, for the defendant.

*Sumner H. Smith (Michael A. Constantino* with him) for
the plaintiffs.

KASS, J.  The plaintiffs owned two parcels of land on
Gates Road in Middleton, the first containing 42,340 square
feet and the second 48,600 square feet, for each of which they
filed a plan for endorsement that approval under the Sub-
division Control Law was not required.  See G. L. c. 41,
§ 81P.  Endorsement to this effect was refused by the plan-
ning board and from that refusal the plaintiffs appealed.

[1] Valerie A. Clows.

We think that the case should be remanded to the Superior Court for inquiry into whether the parcels on the date when subdivision control went into effect in Middleton were owned in isolation or were part of the remainder of an old subdivision and, if the latter, whether Gates Road is a way which was "in existence when the subdivision control law became effective in [Middleton], having, in the opinion of the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon." G. L. c. 41, § 81L, as appearing in St. 1963, c. 580.

As to each parcel the plaintiffs have staked their claim to a § 81P endorsement on the exemption from subdivision control provided for in G. L. c. 41, § 81FF, as appearing in St. 1953, c. 674, § 7. So far as material, § 81FF provides that unregistered lots shown on a plan recorded before the Subdivision Control Law became effective in the host community (i.e., an "uncontrolled subdivision") are not exempt from subdivision control unless the lots "had been sold and were held in ownership separate from that of the remainder of the subdivision when . . . [the subdivision control] law went into effect." So, for example, a person who owns a single lot which was conveyed to him or his predecessor in title out of a recorded — but unapproved — subdivision enjoys "grandfather" privileges for that lot if the conveyance out of the subdivision occurred prior to the date on which the town where the land is located adopted the Subdivision Control Law. Section 81FF was enacted as a curative provision. See 1953 House Doc. No. 2249, at 60. It provides relief to good faith purchasers of individual building lots[2]

---

[2] We do not mean to suggest that the grandfather rights which § 81FF confers apply solely to persons who have purchased only one lot on an "uncontrolled" plat. During the early decades of this century tracts were often laid out in small lots which were combined to make one building parcel which would meet the needs of the buyer or the lot size require-

while subjecting owners of large platted tracts to the Subdivision Control Law and changes in it. By contrasting example, therefore, the owner of 1,200 lots in a recorded subdivision of over 1,800 lots who has purchased them from the original owner prior to the adoption of the Subdivision Control Law, and, in a literal sense, owns them separately from the other 600 lots, is not, should he desire to break his tract into smaller parcels, exempt from subsequently enacted subdivision control. Cf. *Toothaker* v. *Planning Bd. of Billerica*, 346 Mass. 436, 439 (1963), in which, however, it appears from the record that the lots for which exemption was claimed were never conveyed out of the original subdivision until after subdivision control was adopted. See also *Sturges* v. *Chilmark*, 380 Mass. 246, 260 (1980).

When the matter at hand came before the Superior Court, the parties presented a plan which had been recorded on October 8, 1930, in the Essex South District registry of deeds. A sketch of a portion of that plan is attached to this opinion, with two areas shaded. The shaded area which is shaped somewhat like a meat cleaver (marked "A") represents the first parcel on which the plaintiffs sought an endorsement of "approval not required," and the irregular area shaped somewhat like a smoking pipe (marked "B") represents the second parcel.

Following a lobby conference, the judge dictated for the record his understanding of certain facts to which the parties had stipulated. This included a stipulation "that such lots had been sold and were held in ownership separate from that of the remainder of the subdivision shown on the plan on the date when G. L. [c. 41, §§ 81K-81GG] went into effect in the town of Middleton." Town counsel indicated no dissent, and, therefore, in a literal sense appeared to have stipulated the case away. This was so because, as formulated by the judge, the stipulation virtually tracked the governing

ments of zoning laws. An owner of such a parcel, if a person different from the owner of the remainder of the subdivision, would have the benefit of § 81FF.

language of G. L. c. 41, § 81FF, which creates an exemption from subdivision control. On the strength of that stipulation, a judgment entered in the Superior Court ordering the board "to endorse 'approval not required' on lots numbered 603, 616 through 624 and 654 through 661 as they appear on a 1930 subdivision plan."

Had the record not included the pertinent plans, that might have been the end of the matter. Examination of those plans suggests that the stipulation is incomplete. It is uncertain whether the parcels in question were held in isolation from the original 1930 subdivision on the date when Middleton adopted subdivision control or whether they were at that time part of a larger tract remaining from the original subdivision. From the fragment of the "uncontrolled subdivision plan" recorded in 1930 the reader can make out ninety-eight small lots, many no more than twenty-five feet wide. From the numbering of the lots one may infer that the entire 1930 subdivision showed 661 lots. The first parcel at issue in this case (A) aggregates ten lots on the old plan, and the second parcel (B) aggregates eight lots. If a person who owned a large tract carved from an old uncontrolled subdivision could (such tract being literally separate from the remainder of the original subdivision), after adoption of subdivision control, secure exemption from the Subdivision Control Law under § 81FF by presenting, seriatim, clusters of lots, each cluster drawn from the tract held in ownership separate from that of the original entire uncontrolled subdivision, it would be quite possible by such a tactic to develop an entire tract free of subdivision control.[3] *Toothaker* v. *Planning Bd. of Billerica,* 346 Mass. 436, and *Sturges* v. *Chilmark,* 380 Mass. at 260, do not support so broad a sweep for the § 81FF exemption. Construing § 81FF to permit such a course of conduct would be inconsistent with our duty to interpret the statute so as to

---

[3] It is not certain from the record whether the Clowses (the plaintiffs) owned additional land in the tract. Each of the plans filed for endorsement describes abutting property as now or formerly of Clows.

further a principal object of the Subdivision Control Law, viz.: to ensure efficient vehicular access to each lot in a subdivision. *Gifford* v. *Planning Bd. of Nantucket*, 376 Mass. 801, 807 (1978). See *Costanza & Bertolino, Inc.* v. *Planning Bd. of No. Reading*, 360 Mass. 677, 679-680 (1971). Nor would such an application of § 81FF be consistent with its limited purpose of exempting parcels isolated from the remainder of the old subdivision before Subdivision Control Law came into effect.

Examination of the record discloses that inadequacy of access was the basis of the board's refusal of the endorsement which the plaintiffs sought. In response to the plaintiffs' motion to admit facts, the board agreed as to the plans for which endorsement was sought, and copies of those plans were furnished to us by counsel at argument. Neither of those plans shows the boundaries of the old 1930 lots, and each is a perimeter plan of the sort conventionally employed to secure an endorsement under G. L. c. 41, § 81P. See generally *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 602-604 (1980). Each plan carried a note that it combined lots shown on the 1930 plan. The basis for rejection of the plans by the board was that the parcels shown were not on an accepted way in Middleton, a rejection which would be lawful if no exemption from subdivision control pertains and if supported by the facts.

If the § 81FF exemption does not pertain, the central question in the case becomes whether Gates Road has the status of a way within the meaning of G. L. c. 41, § 81L (see definition of the word "subdivision," cls. [a] and [c]).

The judgment is reversed, and the case is remanded to the Superior Court for: (1) findings as to whether on the date Middleton adopted subdivision control the parcels in issue were part of a larger tract owned by the plaintiffs or their predecessors in title; (2) if so, findings as to the status of Gates Road;[4] and (3) further action consistent with this opinion.

*So ordered.*

---

[4] See *Casagrande* v. *Town Clerk of Harvard*, 377 Mass. 703, 706-707 (1979); *Fenn* v. *Middleborough*, 7 Mass. App. Ct. 80, 84-85 (1979); *Spalke* v. *Board of Appeals of Plymouth*, 7 Mass. App. Ct. 683, 689 (1979).