TOWN OF BRIDGEWATER & others[1] vs. JOHN CHUCKRAN.

Plymouth.   May 3, 1966. — June 6, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Zoning*, Nonconforming use.   *Equity Pleading and Practice*, Decree, Suit
for zoning enforcement.

Statement of three tests for determining whether a use of premises after
the adoption of a zoning by-law or ordinance fits within the exemption
therefrom granted to preëxisting nonconforming uses.   [23]

Warranted findings in a suit in equity justified conclusions that a use of
premises in a town by a house builder, before the adoption of a zoning
by-law by the town placed the premises in a residence zoning district,
for mixing concrete only as an incident to his building business, employ-
ing equipment having a mixing capacity of four cubic yards, had
changed subsequent to the adoption of the by-law into a use as a modern
plant for the manufacture and sale of ready mixed concrete, employing
equipment having a mixing capacity of thirty-five cubic yards, and that
the later use did not reflect the "nature and purpose" of the earlier use,
was different in quality or character from the earlier use, was "different
in kind in its effect on the neighborhood," and was not entitled to the
protection afforded to preëxisting nonconforming uses.   [23–24]

Statement of a proper decree protecting continuance of a nonconforming
business on residentially zoned premises antedating the adoption of the
zoning by-law, but enjoining a different kind of business originating on
the premises subsequent to the adoption of the by-law and not entitled
to such protection.   [24]

BILL IN EQUITY filed in the Superior Court on September 4,
1964.

The suit was heard by *Cahill, J.*   All parties appealed
from the following final decree:

"The above-captioned cause came on to be heard and
after hearing, it is hereby ordered, adjudged and decreed
that the Respondent, John Chuckran, be and hereby is re-
strained and enjoined . . . from operating the business of

---

[1] Several abutters and nearby residents were permitted to intervene in sup-
port of the town's bill of complaint.

cement mixing on the premises situated at #437 North Street in the Town of Bridgewater . . . and from the sale and distribution of cement or cement mix from the premises . . . .

"Provided, however, that the Respondent may continue with reasonable expansion the sale of building materials and his operation as a builder substantially as he operated it prior to June 3, 1957, keeping for sale and for his own use building materials to be stored mostly in the cement block building at said #437 North Street; as well in connection therewith he may continue to operate the small batcher plant located just east of his garage.

"The Respondent's business activity is to be confined to that portion of said #437 North St. running roughly from the garage easterly to the vicinity of the so-called turn-around and southerly of Cedar Crest Drive to Respondent's southern boundary.

"No more than two trucks are to be used by said Respondent in said building business. Use and storage of trucks and mechanized equipment not used by Respondent in connection with his said building business as authorized above is forbidden.

"The Respondent is further ordered to remove from that part of #437 North Street which lies north of Cedar Crest Drive empty cement bags, piles of sand, gravel, and other mix materials including cement, vehicles and other equipment which may have been wrecked, dismantled or abandoned as useless or as obsolescent."

*Harry P. Dunn* for the Town of Bridgewater (*Robert G. Clark, III*, for the interveners, with him).

*George L. Wainwright* (*Charles P. Buckley* with him) for the defendant.

KIRK, J. The town seeks to enjoin the defendant from using premises, owned by him and located in a residence district, for the mixing, sale and distribution of concrete. The judge voluntarily made comprehensive findings of fact, which, by adoption following requests under G. L. c. 214, § 23, became a statutory report of material facts. The evi-

dence is reported. We apply the same standard of review that was applied in *DiBurro* v. *Bonasia*, 321 Mass. 12, 13, 15.

The facts found by the judge are fully supported by the evidence. We summarize them. The zoning by-law became effective on June 3, 1957. Prior to that date Chuckran's premises, at 437 North Street, were used for his residence and for the keeping of building materials which he sold to others or used in his own principal business as a house builder. The materials were kept in a cement block building erected by Chuckran to the rear of the dwelling. Incidental to his building business he used a small batcher on the premises and a portable batcher mounted on a truck to mix concrete which was then poured for foundations of houses built by him. More frequently he bought and used concrete mixed by others. The total mixing capacity of Chuckran's equipment in 1957 was four cubic yards. His other equipment in 1957 consisted, at most, of two dump trucks, a tractor loader, a heavy duty trailer and a one and one-half ton truck.

Since the adoption of the zoning by-law Chuckran has greatly increased his concrete mixing equipment, notably in trucks. The total mixing capacity of his trucks is now thirty-five cubic yards. In addition Chuckran has built and plans to use a batcher made up of a large steel bin mounted on steel legs thirty-five feet high with a long conveyor belt which would feed ingredients into the bin from which concrete mix would be poured into trucks stationed below. Six of his trucks are ten-wheelers. In 1961, the telephone listing for the business was changed from "John Chuckran Lumber Company" to "Chuckran's Lumber and Concrete Company." Also in 1961, Chuckran added the words "and Concrete" to the signs on his trucks. Increasingly unsightly mounds of empty cement bags have piled up. Old motor vehicles and other waste materials have accumulated over an area larger than that originally used by Chuckran for business purposes in 1957. From all appearances, the mixing of concrete and the supplying of it to others is now a major enterprise.

Chuckran was unable to supply business records prior to 1960. Although he contended that he was engaged in the concrete mixing business prior to zoning and that his increased activity in that line was a permissible increase in volume within the scope of the exemption for a nonconforming use (see *Building Commr. of Medford* v. *McGrath,* 312 Mass. 461, 462) the judge found, and we agree, that Chuckran's pre-1957 work with concrete was incidental to his main business of construction whereas his activities since the enactment of the zoning by-law show the emergence of a new business in the manufacture, sale and distribution of ready mixed concrete.

Recent cases have emphasized three tests for determining whether current use of property fits within the exemption granted to nonconforming uses. (1) Whether the use reflects the "nature and purpose" of the use prevailing when the zoning by-law took effect. *Massachusetts Broken Stone Co.* v. *Weston,* 346 Mass. 657, 662. *Superintendent & Inspector of Bldgs. of Cambridge* v. *Villari,* 350 Mass. 176, 177–178. (2) Whether there is a difference in the quality or character, as well as the degree, of use. *Brady* v. *Board of Appeals of Westport,* 348 Mass. 515, 523. *Building Inspector of Malden* v. *Werlin Realty, Inc.* 349 Mass. 623, 624–625. (3) Whether the current use is "different in kind in its effect on the neighborhood." *Medford* v. *Marinucci Bros. & Co. Inc.* 344 Mass. 50, 60, and cases cited. We think that Chuckran's current use of his land with respect to his concrete mixing business is barred when tested by these standards.

The original nature and purpose of the use which was exempted from the zoning regulations was use as a house builder's main yard in which the mixing of concrete was merely incidental to the general business. In so far as the land is now used as a ready mixed concrete manufactory and center for supply to others, the original nature and purpose of the enterprise has changed. See *Lexington* v. *Bean,* 272 Mass. 547, 553.

The quality and character of the use has also changed in

that the concrete operation has now developed "into a modern plant using more elaborate fixed facilities . . . [and] more complicated vehicles" than in 1957. *Seekonk* v. *Anthony,* 339 Mass. 49, 53–54. The deleterious effect of this change on the otherwise residential surroundings is obvious. Compare *Cochran* v. *Roemer,* 287 Mass. 500, 508, with *Marblehead* v. *Rosenthal,* 316 Mass. 124, 128.

Applying the "minimum tolerance which must be given to non-conforming uses," *Chilson* v. *Zoning Bd. of Appeal of Attleboro,* 344 Mass. 406, 411, to the judge's findings, we think that Chuckran has not sustained the burden of proving that his current use of the land has not changed from the 1957 use. *Colabufalo* v. *Public Bldgs. Commr. of Newton,* 332 Mass. 748, 751.

In order to reduce the prospect of further litigation we think that the final decree should be modified to make clear the legal effect of the findings of fact made by the judge. The first paragraph is to be modified by adding the following clause, "reserving to the respondent, however, the right to operate a concrete mixer with a capacity not in excess of four cubic yards for the sole purpose of providing concrete in connection with the performance of his own building contracts." The second and third paragraphs are to be expunged. The fourth paragraph is also to be struck out, and the following provision substituted therefor: "The only trucks or mechanical equipment to be permitted on the premises are to be those used solely in connection with the building business." The fifth paragraph is to be modified by adding a requirement that the defendant dismantle as soon as practicable the thirty-five foot high structure and its appurtenances. The date for compliance with the latter provision is to be fixed by the judge.

As thus modified the final decree is affirmed with costs of appeal.

*So ordered.*