LAURA GREEN & another[1] *vs.* BOARD OF APPEALS OF
PROVINCETOWN & others.[2]

No. 87-568.

Barnstable.    January 5, 1988. — October 14, 1988.

Present: GREANEY, C.J., CUTTER, GRANT, ARMSTRONG, BROWN, DREBEN, KASS & WARNER, JJ.

Further appellate review granted, 403 Mass. 1105 (1988).

*Practice, Civil,* Zoning appeal, Parties. *Zoning,* Appeal, Enforcement, Non-conforming use or structure, Restaurant, Parties, Person aggrieved. *Words,* "Person aggrieved."

On an appeal from a decision of a town's board of appeals, the judge properly concluded that a projected doubling or trebling of the number of customers served by a restaurant would constitute an extension or change of a prior nonconforming use, where he was warranted in finding that the difference in degree of use would be attributable to a proposed change in the quality or character of the business from a primarily sit-down, full-service restaurant to a fast food, counter service operation with emphasis on take-out orders. [472-473]

A resident of a town, whose only grievance was that the town's building inspector was acting in violation of the duty he owed the citizenry at large to enforce provisions of the zoning by-law, had standing as a "person aggrieved," entitled to seek administrative relief from the board of appeals under G. L. c. 40A, § 8, and, after exhausting administrative remedies, to obtain judicial review under § 17. [473-480] KASS, J., with whom CUTTER, J., joined, dissenting.

Where the building inspector of a town had, by letter to the selectmen, definitively ruled that a proposed alteration to certain premises would not require a special permit, a resident of the town, seeking to assert the rights of the citizenry at large, was entitled to standing as a "person aggrieved" for purposes of obtaining review of the inspector's ruling, even though she did not first formally request him to enforce the zoning by-law. [480] KASS, J., with whom CUTTER, J., joined, dissenting.

---

[1] Cape Tip Investment, Inc.

[2] Wyman & Wyman of Provincetown, Inc.; board of selectmen of Provincetown; Roscob Limited Partnership (the partners were not named); and Cicero International, Inc.

CIVIL ACTION commenced in the Superior Court Department on May 22, 1986.

The case was heard by *John J. Irwin, Jr.,* J.

*Michele C. Morley & Robert A. Bianchi* for Wyman & Wyman of Provincetown, Inc., submitted a brief.

ARMSTRONG, J. The underlying issue in this case is whether, as ruled by a judge of the Superior Court, the defendant Wyman & Wyman of Provincetown, Inc. (W & W), is required by § 1260 of the Provincetown zoning by-law to have a special permit in order to operate a Burger King franchise in premises used until 1986 by a restaurant known as Cicero's.[3] Of broader concern, however, is a question of standing: whether the plaintiffs, who would lack standing to appeal if such a special permit were granted, have standing to insist that the special permit requirement be enforced. Since the adoption of the new Zoning Act (St. 1975, c. 808, § 3), a decision of this court, *Chongris* v. *Board of Appeals of Andover,* 17 Mass. App. Ct. 999 (1984), suggested, in a dictum, that the new statute might restrict standing to demand enforcement of zoning by-laws and ordinances to persons whose property is detrimentally affected by the alleged by-law violation. A second decision, *Butts* v. *Zoning Bd. of Appeals of Falmouth,* 18 Mass. App. Ct. 249 (1984), could be read as following the view stated in *Chongris.* The question of standing is pivotal to the present appeal, which has caused us to reexamine the question. To avoid possible conflicting interpretations of the statute, the panel was enlarged to include all members of the panels which had decided the two earlier appeals. See Mass.R.A.P. 24(a), 365 Mass. 872

---

[3] Cicero's was operated by the defendant Cicero International, Inc., which leased the premises in question from Roscob Limited Partnership through 1985. W & W leased the premises commencing in 1986. Section 1260 of the Provincetown zoning by-law has, since 1980, required a special permit for the operation of a restaurant in any zoning district. Cicero's predated that requirement and operated as a prior nonconforming use. Whether the Burger King restaurant could operate on the same basis turns on whether it represents a "change or substantial extension of such use," G. L. c. 40A, § 6, first par., as inserted by St. 1975, c. 808, § 3, and, if it is an extension or change, that it not be "substantially more detrimental than the existing nonconforming use to the neighborhood." *Ibid.* The provisions of § 2110 of the by-law substantially track those of § 6.

(1974). Compare *Green* v. *Commonwealth*, 13 Mass. App. Ct. 524 (1982).

The question arose in this manner. In January, 1986, the board of selectmen renewed the common victualler's license of Cicero's and scheduled a public hearing on the transfer of that license to Burger King. At the hearing the board asked the building inspector for an opinion whether the change from Cicero's to Burger King would constitute a change of use under the by-law. On February 28, 1986, the building inspector by letter advised the selectmen that the contemplated change was not a change of use and that no special permit was required. On March 6, Green, a resident[4] of Provincetown who lives (according to the defendants) two miles away from the proposed Burger King, appealed to the zoning board of appeals from the building inspector's determination, using a form prepared by the board for appeals under G. L. c. 40A, § 8. The matter was heard on April 10. On May 2, the board filed a decision with the town clerk. Green and Cape Tip Investment, Inc., an abutting property owner, appealed to the Superior Court under G. L. c. 40A, § 17.

The defendants challenged the standing of both plaintiffs: Green, as "a citizen . . . zealous in the enforcement of law but without private interest," *Godfrey* v. *Building Commr. of Boston*, 263 Mass. 589, 590 (1928), and Cape Tip as a business competitor[5] who should be denied standing under the line of cases represented by *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427 (1949), *Waltham Motor Inn, Inc.* v. *LaCava*, 3 Mass. App. Ct. 210, 217 (1975), and *Sherrill House, Inc.* v. *Board of Appeal of Boston*, 19 Mass. App. Ct. 274, 275-277 (1985). The judge, without ruling expli-

---

[4] The testimony at trial did not indicate whether Green is a property owner; we note, however, that the defendants Roscob and Cicero counterclaimed for damages and sought an attachment of real estate owned by Green or the coplaintiff in Barnstable County in the amount of $1,100,000. The judge denied the motion.

[5] Cape Tip's abutting building is leased to two different corporations which use the premises for food service operations. One of these, controlled by the principals of Cape Tip, was a restaurant known as Euro Cafe. The other runs a bakery and ice cream parlor known as Latest Dish.

citly on the contention, implicitly recognized the plaintiffs' standing by according them the relief they sought.

On the merits, applying the second of the tests set out in *Bridgewater* v. *Chuckran*, 351 Mass. 20, 23 (1966), the judge concluded that the change from Cicero's to Burger King would effect "a difference in the quality or character, as well as the degree, of use", *ibid.*, and would thus constitute an extension or change of a nonconforming use. That conclusion was amply supported by subsidiary findings that were amply supported by the evidence. Although the exterior of the building was not to be altered substantially and the number of seats (125) was not to be enlarged, the gross income was projected to increase from $412,000 in 1985, Cicero's last year of operation, to $1,050,000 in Burger King's first year of operation, based on a six-month season. The number of customers was expected to be double to treble that of Cicero's. The manner of operation was to be substantially different, changing from a primarily sit-down, full-service restaurant, with a secondary commerce in take-out sandwiches, pizzas, and bakery items, to a fast food, counter service operation, with the emphasis on take-out orders. The defendants' contention that a change of use is not made out unless all three of the *Chuckran* tests are satisfied is undercut by the very cases cited in that decision as illustrative of the application of the tests. While all three tests were satisfied in *Chuckran*, we have found no case, and the defendants cite none, holding all three to be requisite to a finding that change or extension has taken place. The judge recognized that an increase in the volume of business does not by itself constitute a change of use, if the increased use is attributable to growth of the original nonconforming use. *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205, 214 (1982). Here the growth would be attributable, instead, to a change in the character of the restaurant, exemplified by changes in the method of service, type of food sold, internal surroundings, and style of food preparation. It cannot be said as matter of law that such changes can never support a finding of a change of use. The question is largely one of fact. See, e.g., *Hinves* v. *Commissioner of Pub. Works of Fall River,*

342 Mass. 54, 57 (1961); *Kreger* v. *Public Bldgs. Commr. of Newton*, 353 Mass. 622, 627 (1968); *Jasper* v. *Michael A. Dolan, Inc.*, 355 Mass. 17, 24 (1968). Conformably to these findings, a judgment was entered reversing the board's decision, declaring that W & W could not operate the proposed Burger King without obtaining a special permit and revoking the transfer of Cicero's common victualler's license to W & W that had been approved by the selectmen following the decision of the board of appeals. That judgment must be affirmed[6] unless the judge erred in his implied ruling that the plaintiffs had standing to demand enforcement of the zoning by-law.

Despite the fact that the defendants raised the question of the plaintiffs' standing repeatedly, by a motion to dismiss and by argument at trial, the plaintiffs made no evidentiary showing that they were aggrieved in the sense used in such cases as *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. at 430-431, *Marrotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 202-204 (1957), *Waltham Motor Inn, Inc.* v. *LaCava*, 3 Mass. App. Ct. at 214-217, and *Redstone* v. *Board of Appeals of Chelmsford*, 11 Mass. App. Ct. 383, 384-385 (1981): i.e., having a private legal right in property so situated as to be detrimentally affected by the decision appealed from. Standing in this sense has historically been required in order to appeal from the grant of a special permit or variance. Such standing was regarded as a creature of statute and limited by

---

[6] We have omitted discussion in the text of a somewhat unfocused argument that occupies much of the defendant W & W's brief. It begins by discussing *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101 (1984), suggesting that the special permit requirement of § 1260 (of the by-law) may be unconstitutionally overbroad, and ends with a contention that the court erred in not deferring to the judgment of the board of appeals. The argument seems not to have been advanced in the Superior Court. In any event it lacks merit. In the *SCIT, Inc.*, case the by-law made all uses in certain zoning districts discretionary (i.e., subject to special permit), which is not true here; and the new Zoning Act in § 17 retains from earlier practice the unique form of judicial review applicable peculiarly to zoning cases, whereby the court finds the facts de novo and measures the legal sufficiency of the board of appeals' decision against the court's findings of fact rather than against those found by the board. See *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 558-559 (1954).

statute. "An owner has no strictly private right in the enforcement of zoning regulations, unless some statute creates such right." Circle Lounge & Grille, Inc. v. Board of Appeal of Boston, 324 Mass. at 431.

Green, at trial, did not assert that she had any such private right. Rather, she was expressly asserting "the general right of the citizen to have his municipality enforce the applicable law." Brady v. Board of Appeals of Westport, 348 Mass. 515, 519 (1965). That right is not a creation of statute; it has been a recognized part of our common law from early times, Brewster v. Sherman, 195 Mass. 222, 224-225 (1907), and cases cited, and was traditionally enforced by a petition for a writ of mandamus. "The general rule is that, to maintain a petition for mandamus, the petitioner must show some private right or interest beyond the right and interest of the public. But when the question is one of public right and the purpose is to procure the performance of a public duty, and no other remedy is open, a petitioner need not show that he has any special interest in the result: it is sufficient that as a citizen he is interested in the due execution of the laws." Bancroft v. Building Commr. of Boston, 257 Mass. 82, 84 (1926) (mandamus to bar building inspector from carrying out his expressed intention to issue a permit for an apartment building that would, the plaintiffs asserted, violate the yard requirements of the building law). "Citizens . . . do have rights in respect of the enforcement of zoning and like regulations. They may call upon enforcing officers to enforce the law, and if the officers decline or fail to act they may petition for a writ of mandamus." Woods v. Newton, 349 Mass. 373, 378 (1965). The right litigated in such an action is a public right, one shared by the citizens of the municipality, with the result that the judgment in the action is normally binding on citizens who are not themselves named as parties. Morganelli v. Building Inspector of Canton, 7 Mass. App. Ct. 475, 482-486 (1979).[7]

---

[7] Cases (in addition to those cited in the text) which discuss and enforce this public right in a zoning context include Whittemore v. Town Clerk of Falmouth, 299 Mass. 64 (1937), Leahy v. Inspector of Bldgs. of New Bedford, 308 Mass. 128 (1941), Sunderland v. Building Inspector of North

The question before us is whether the traditional, broad citizens' right to require the building inspector to proceed against violations of a zoning ordinance or by-law has survived the adoption of the new Zoning Act, G. L. c. 40A, as inserted by St. 1975, c. 808, § 3. Clearly the traditional vehicle for requiring enforcement — the mandamus action — has not survived. *Neuhaus* v. *Building Inspector of Marlborough*, 11 Mass. App. Ct. 230, 234-235 (1981). *Vokes* v. *Avery W. Lovell, Inc.*, 18 Mass. App. Ct. 471, 482 (1984). As a result of statutory changes in the 1975 Act — the requirement that the building inspector respond to requests for enforcement by written notification stating reasons (§ 7), the right of appeal to the board of appeals from such a response by "any person aggrieved by reason of his inability to obtain . . . enforcement action" (§ 8), and the prohibition against maintaining any action in court to redress zoning violations "except in accordance with the provisions of [§§ 7, 8, and 17]" (§ 7) — the *Neuhaus* case read the 1975 Zoning Act to require that enforcement proceedings follow an administrative route. "Thus, with the enactment of the new Zoning Act, the *Brady* right to mandamus as a remedy for zoning violations . . . became a right to request the officer charged with enforcing local zoning to enforce the by-law under G. L. c. 40A, § 7, and, if the requesting party is aggrieved by the inspector's decision, a right to seek administrative relief from the board under G. L. c. 40A, §§ 8 and 15, and, after exhausting administrative remedies, a right to obtain judicial review pursuant to G. L. c. 40A, § 17." *Vokes* v. *Avery W. Lovell, Inc.*, 18 Mass. App. Ct. at 482-483, citing the *Neuhaus* case.

The defendants make the contention that the 1975 Zoning Act had the further effect of snuffing out the historic, broad right of citizens generally to require that their municipal zoning

---

*Andover,* 328 Mass. 641 (1952), *Atherton* v. *Selectmen of Bourne,* 337 Mass. 250 (1958), and *Bowes* v. *Inspector of Bldgs. of Brockton,* 347 Mass. 295 (1964). For cases applying the same principle in a non-zoning context, see *Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91 (1926); *D.N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven,* 294 Mass. 570 (1936); *Cape Cod S.S. Co.* v. *Selectmen of Provincetown,* 295 Mass. 65 (1936).

enforcement officers enforce the zoning laws strictly. This contention is based on the use in the 1975 Act of the word "aggrieved" in its enumeration of the successive rights of administrative and judicial appeal. Thus, § 8 gives a right of appeal (from a building inspector's action to the board of appeals) to "any person *aggrieved* by reason of his inability to obtain a permit or enforcement action" and to "any person including an officer or board of the city or town, or of an abutting city or town *aggrieved* by an order or decision of the inspector of buildings, or other administrative official, in violation of any provision of [the Zoning Act] or any ordinance or by-law adopted thereunder" (emphasis supplied). And § 17 gives a right of judicial review to "[a]ny person *aggrieved* by a decision of the board of appeals" (emphasis supplied). The contention is pressed that the Legislature, by the dual use of the word "aggrieved," intended to restrict the class of persons who could avail themselves of the successive rights of appeal to those whose private property interests are adversely affected by the action or refusal to act complained of.

We do not think that the Legislature had that intent. The 1975 Zoning Act had its origin in a Report of the Department of Community Affairs relative to proposed changes and additions to the Zoning Enabling Act, 1972 House Doc. No. 5009. That report recommended that zoning enforcement officers be required to respond in writing to requests for enforcement, following in this regard a suggestion advanced in *Williams* v. *Inspector of Bldgs. of Belmont*, 341 Mass. 188, 190 (1960) ("A provision in a by-law or ordinance for the filing of a request for enforcement and for formal action on the request could, it would seem, operate to cause an appealable decision"[8]). The same suggestion was advanced in *Brady* v. *Board of Appeals of Westport*, 348 Mass. at 520-521 & n.4, as a

---

[8] Section 13 of the 1954 Zoning Enabling Act (G. L. c. 40A, as inserted by St. 1954, c. 368, § 2), as amended by St. 1955, c. 325, § 1, provided for an appeal to the board of appeals "by any person aggrieved by any order or decision of the inspector of buildings . . . in violation of any provision of this chapter, or any ordinance or by-law adopted thereunder," but it did not require the building inspector to respond to enforcement requests by formal action in writing.

means of improving the adequacy of an administrative alternative to a mandamus proceeding. There is nothing in the text of the report to suggest that it was part of the purpose of the proposed changes to strip the citizenry at large of their long-recognized right to require responsible officials to act against zoning violations. We are skeptical that so significant an abridgement of public right would be left to inference. *Pineo* v. *White*, 320 Mass. 487, 491 (1946). *Ferullo's Case*, 331 Mass. 635, 637 (1954). *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984).

It is difficult, moreover, to reconcile the restrictive interpretation of "aggrieved" with the syntax of § 8 ("any person *including an officer or board of the city or town, or of an abutting city or town* aggrieved by an order or decision of the inspector of buildings" [emphasis supplied]). Municipal officers or boards, acting as such, clearly would not be aggrieved in the sense contended for by the defendants. The right of appeal accorded is not to protect their private property interests. We necessarily interpret "aggrieved," as used in § 8, in a broader sense. "The scope and meaning of the words 'person who is aggrieved' must be determined with reference to the context and the subject matter." *Ayer* v. *Commissioners on Height of Bldgs. in Boston*, 242 Mass. 30, 33 (1922). *American Can Co.* v. *Milk Control Bd.*, 313 Mass. 156, 161 (1943). In the context of § 8 we think the word "aggrieved" includes a citizen whose only grievance is that the building inspector is acting in violation of the duty he owes to the citizenry at large to enforce the provisions of the zoning by-law. This interpretation is reinforced by the provision of § 8 extending the right to take an appeal (to the board of appeals) to "any person aggrieved by reason of his inability to obtain a permit or enforcement action." The predecessor statutes, G. L. c. 40A, § 13 ("An appeal to the board of appeals . . . may be taken by any person aggrieved by reason of his inability to obtain a [building] permit") and § 21 ("Any person aggrieved by a decision of a board of appeals . . . may appeal to the superior court"), as in effect prior to St. 1975, c. 808, § 3, were interpreted to give a right of appeal to a disappointed applicant

for a building permit, regardless of his existing property rights. *Spalke* v. *Board of Appeals of Plymouth*, 7 Mass. App. Ct. 683, 684 n.1 (1979). On a parallel construction, we think that § 8 of the 1975 Zoning Act gives a right of appeal to one who applies unsuccessfully to a building inspector under § 7 for enforcement. Section 7 does not purport to limit the class of persons who may request enforcement. We thus adhere to the view expressed in *Vokes* v. *Avery W. Lovell, Inc.*, 18 Mass. App. Ct. at 482, that the 1975 Zoning Act merely altered the procedural vehicle by which the "*Brady* right" might be vindicated.

We recognize that we expressed a contrary view, by way of dictum, in *Chongris* v. *Board of Appeals of Andover*, 17 Mass. App. Ct. at 1000. The holding in that case was that a neighborhood association ("Friends of Shawsheen Village") had no legal standing to file an appeal (under § 8) to the board of appeals from the building inspector's issuance of a building permit to Chongris. "It is settled that a statement of organizational purpose cannot clothe a civic association with aggrieved person status. *Amherst Growth Study Comm.* v. *Board of Appeals of Amherst*, 1 Mass. App. Ct. 826, 827 (1973)." 17 Mass. App. Ct. at 999-1000. We adhere to that holding. The discussion concerning the lack of standing of the association president, who was a resident of Andover, was dictum because, as the appellate record discloses, that individual had not filed an appeal from the action of the building inspector. The sole appellant before the board had been the association itself. In *Butts* v. *Zoning Bd. of Appeals of Falmouth*, 18 Mass. App. Ct. at 253, the appellant before the board, Carley, was an immediate abutter to the property that was the subject of the allegedly unlawful building permit. His property would lose its ocean view if the building were to be constructed. The permittee did not contest Carley's standing before the board or in the Superior Court. When the issue was raised here, it was assumed by the parties that Carley must satisfy the *Chongris* standard: i.e., must demonstrate injury to his personal property rights. As he obviously did so, the assumption had no bearing on the outcome of the appeal. The *Chongris* and

*Butts* cases were correctly decided but should not be relied on as authoritative statements of the standing required under § 8 to appeal to a board of appeals from an allegedly unlawful decision of a building inspector.

Superficially, our interpretation of § 8 seems to result in an anomaly: that the words "person aggrieved" as used in § 17 (authorizing appeals from the decision of the board of appeals or special permit granting authority to a court) carry a different connotation, depending on whether the decision appealed from relates to a request for enforcement under § 7 or to an application for a special permit or variance under § 9 or § 10. Any anomaly disappears, however, when the different natures of the interests involved in the different proceedings are considered. An individual who appeals from the grant of a special permit or variance is suing to protect his private property interests from the indirect, allegedly detrimental effect of the project contemplated by the special permit or variance. The proceeding before the board is addressed, in the last analysis, to its discretion, and only a limited class of individuals — those whose property interests will be affected — is given the standing to challenge the board's exercise of its discretion. The enforcement proceeding of § 7, by contrast, is the statutory replacement for the traditional mandamus action, by which residents and citizens generally, having no standing in their own right to proceed against violators of the law, could compel public officials charged with the responsibility of enforcing the law to do so. An enforcement proceeding is not addressed to the discretion of the building inspector or of the board of appeals. The purpose of the proceeding is simply to compel them to do what the law requires them to do. The person demanding enforcement does so, not in his own right, but in the public right, to secure the performance of a duty owed to the public. If a board of appeals denies enforcement in violation (as the plaintiff alleges) of the law, the plaintiff stands before the court in the shoes of the public, aggrieved in the sense that the public's right to have the law enforced is being violated. In both types of appeals, therefore, the word "aggrieved" carries its usual connotation of injury to legal interests; but in variance

and special permit appeals, those interests are private, and in enforcement appeals, public. Compare *Kline* v. *Shapley*, 232 Mass. 500, 502-504 (1919). This view is implicit in our holding in *Morganelli* v. *Building Inspector of Canton*, 7 Mass. App. Ct. at 482-488, that residents other than one demanding enforcement are bound by the final judgment in an enforcement proceeding, whether they participated or not.

Applying these principles to the present case, we conclude that the judge ruled correctly that the plaintiff Green had standing to appeal to the board of appeals and, thereafter, to the Superior Court. It is immaterial that her appeal to the board was not from a direct denial of a request by her for enforcement but was, rather, from the building inspector's written opinion stating (to the selectmen) that W & W was not required to obtain a special permit to operate the proposed Burger King.[9] The opinion was a sufficiently definitive ruling to indicate that any request for enforcement would be denied. Little purpose would be served, in any event, by reversing on a purely technical, procedural ground,[10] when the losing party, having standing as a citizen to demand enforcement, need only do so now to reinitiate the proceeding. The matter has been fully and fairly tried once. See *Harker* v. *Holyoke*, 390 Mass. 555, 561 (1983). Retrial would be required only to vindicate substantial rights.

*Judgment affirmed.*


KASS, J. (with whom Cutter, J., concurs, dissenting). I respectfully dissent. By the time the Legislature established a statutory right to appeal to a board of appeals from inability

---

[9] We note that, in response to a later filing by Green, the building inspector addressed a memo to her stating that the opinion he had expressed in his letter to the selectmen would stand.

[10] We do not suggest that a technical ground exists in this case. Section 8 authorizes appeals both from actions on enforcement requests and from "an order or decision" of the building inspector. The letter to the selectmen was a "decision" within the meaning of § 8. A request for enforcement was in this situation not necessary to generate a definitive ruling.

to obtain enforcement action by a building inspector (see G. L. c. 40A, § 8, as inserted by St. 1975, c. 808, § 3),[1] the words "person aggrieved" had acquired some twenty-five years worth of decisional veneer. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 430-431 (1949) ("Commonly a person aggrieved is one whose legal rights have been infringed . . . . An owner has no strictly private right in the enforcement of zoning regulations, unless some statute creates such right" [citations omitted]); *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 202-204 (1957); *Bradshaw* v. *Board of Appeals of Sudbury*, 346 Mass. 558, 560 (1963); *Building Inspector of Acton* v. *Board of Appeals of Acton*, 348 Mass. 453, 457 (1965); *Waltham Motor Inn, Inc.* v. *LaCava*, 3 Mass. App. Ct. 210, 213-215, 217 (1975).

I am unwilling to assume that in 1975 the Legislature used the words "person aggrieved" in § 8 of "new" c. 40A in a fit of absence of mind. Indeed, it is a familiar canon of construction that "it . . . must be presumed that the Legislature knew preexisting law and the decisions of [the] court." *Condon* v. *Haitsma*, 325 Mass. 371, 373 (1950). *Building Inspector of Mansfield* v. *Curvin*, 22 Mass. App. Ct. 401, 405 n.7 (1986) (construing a provision of G. L. c. 40A, § 3). Had the Legislature wished to confer enforcement power on "any inhabitant of the city or town in which the land lies" it could have done so, instead of employing what had become a term of art.

The boards of appeal, the bar, and the public are better served by a unitary meaning, for zoning law purposes, of the term "person aggrieved," rather than having it mean one thing under § 8 and another under § 17 of c. 40A. Confusion is certain to flow from the dual standard adopted by the majority. That dual standard produces an anomalous ·consequence: only a person with a palpable interest may appeal from the action of a board of appeals while anybody, irrespective of interest,

---

[1] The "old" Zoning Enabling Act, inserted by St. 1954, c. 368, § 2, had empowered municipalities to confer an analogous right by zoning by-law or ordinance. That provision appeared in the second paragraph of § 13 of the "old" c. 40A.

may appeal from a decision of the building inspector, whose decision may be less consequential than that of the board.

Municipal mischief is unlikely to run rampant absent a "citizen's right" to enforce the zoning law. One has only to contemplate the volume of zoning litigation to realize that our cities and towns are adequately supplied with watchdogs who meet the traditional aggrieved person test. There ought to be particular comfort on that score by reason of the identification by the 1975 zoning act as "parties in interest" all "abutters, owners of land directly opposite on any public or private street or way, and abutters to the abutters within three hundred feet of the property line of the petitioner . . . , notwithstanding that the land of any such owner is located in another city or town, the planning board of the city or town, and the planning board of every abutting city or town." G. L. c. 40A, § 11, as amended by St. 1979, c. 117. That language simultaneously establishes a fair-sized reserve of combatants for the zoning wars and sets limits upon those eligible to protest. The Legislature's care in defining who are "parties in interest" for purposes of the Zoning Act constitutes another reason for reading the words "aggrieved person" in § 8 in the usual limiting sense in which they are understood in zoning cases. Perhaps significantly, when the Legislature in 1979 amended the definition of "parties in interest" which appears in G. L. c. 40A, § 11, it narrowed the category. If none among the considerable category which remains — whether private persons or public officials — is moved to raise the hue and cry about an act or decision of a building inspector or board of appeals, one may question the wisdom of our inviting additional parties into the ranks of qualified litigants.