40 Mass. App. Ct. 71                                             71

Ka-Hur Enterprises, Inc. *v.* Zoning Board of Appeals of Provincetown.

## KA-HUR ENTERPRISES, INC. *vs.* ZONING BOARD OF APPEALS OF PROVINCETOWN.

No. 94-P-1523.

Suffolk. December 15, 1995. – February 21, 1996.

Present: PORADA, GREENBERG, & FLANNERY, JJ.

Further appellate review granted, 422 Mass. 1110 (1996).

*Zoning,* Building permit, Special permit, By-law, Nonconforming use or structure. *Words* "Discontinued," "Abandoned."

The term "discontinued," appearing in a town zoning by-law which was adopted after the enactment of G. L. c. 40A, § 6, and the language of a zoning by-law which tracked the cognate provision of that statute, was not synonymous with the term "abandoned" appearing in the by-law, with the result that a judge of the Land Court correctly ruled that the non-use of a property for the primary purpose of a fuel oil storage and distribution center for more than two years resulted in the loss of its protected status as a prior nonconforming use under the by-law [73-74], and further that there was no protection under the statute, as there had been a substantial change in the nonconforming use of the premises [74-75].

CIVIL ACTION commenced in the Land Court Department on May 27, 1993.

The case was heard by *Robert V. Cauchon, J.*

*Christopher J. Snow* for the plaintiff.

*Jeanne S. McKnight* for the defendant.

PORADA, J. The plaintiff appeals from a judgment of the Land Court upholding the defendant board's denial of the plaintiff's applications for a building permit and special permits. The plaintiff claims the judge erred in determining: (1) that the terms "discontinued" and "abandoned" in the Provincetown zoning by-law art. II, § 2130,[1] are not synonymous and (2) that the plaintiff's proposed use of its property

---

[1]Article II, § 2130, titled "Abandonment," provides as follows: "A nonconforming use which has been abandoned, or discontinued for a period of two years, shall not be re-established, and any future use of the premises shall conform with this By-Law."

as a fuel storage and distribution depot was not a protected nonconforming use under G. L. c. 40A, § 6. We affirm the judgment.

We summarize the pertinent facts as found by the judge. The plaintiff owns property at 30 Harry Kemp Way in Provincetown. The first zoning by-law in Provincetown was enacted in 1951. At that time and until November 13, 1978, when a comprehensive revision of the by-law was adopted, the primary use of the property was as a fuel oil storage and distribution facility. Under the original and the revised by-law the property was located in a residential district, and, thus, its use as a fuel oil storage and distribution facility was permitted as a prior nonconforming use. In 1979, the property in question was acquired by Nauset Trawling Co. (Nauset) who from December, 1979, to August, 1987, operated a fishing business and a truck repair shop on the property. Nauset also stored fuel oil in two 20,000-gallon tanks on the premises. It delivered the oil to its fishing vessels, personal residences of some of its employees, and, occasionally, to out-of-town fishing vessels. These activities ceased in August, 1987, when Nauset sold the property to the plaintiff.

When the plaintiff purchased the property, it continued to store fuel oil in the two tanks on the premises until it was ordered to drain them in October, 1992, because of a leaking valve. In addition, since its acquisition, the plaintiff has stored five-gallon cans of oil, oil burners, oil tanks, and trucks in the buildings located on the property. In January, 1993, the plaintiff applied for a building permit for improvements to the property in order to install a new 25,000-gallon fuel oil storage tank and to remove the two old tanks on the property. The building inspector denied the permit on the ground that the nonconforming use had been abandoned or discontinued pursuant to art. II, § 2130, of the by-law during Nauset's ownership of the property. The plaintiff appealed from this decision to the board and requested, in addition, special permits pursuant to art. II, § 2110.[2] The board upheld the building inspector's denial of the permit and also denied the special permits.

The plaintiff then appealed to the Land Court. The judge

---

[2]Article II, § 2110, fourth paragraph, of the by-law provides: "Pre-existing nonconforming uses may be changed upon the granting of a Special Permit by the Board of Zoning Appeals as specified in Section 4300."

in the Land Court found that after Nauset acquired the property the use of the premises for storage as a fuel oil storage and distribution facility was ancillary to Nauset's fishing and truck repair business. Accordingly, the judge ruled that the non-use of the property for the primary purpose of a fuel oil storage and distribution center for more than two years resulted in the loss of its protected status as a prior nonconforming use pursuant to the provisions of art. II, § 2130, of the by-law and G. L. c. 40A, § 6.

We address the plaintiff's claims of error.

1. *"Abandon" and "discontinue."* General Laws c: 40A, § 6, as appearing in St. 1975, c. 808, § 3, provides that "[a] zoning ordinance or by-law may define and regulate nonconforming uses and structures abandoned or not used for a period of two years or more." Prior to the passage of the Zoning Act in 1975, the word "discontinued" in zoning ordinances and by-laws was interpreted to be the legal equivalent of "abandoned." *Pioneer Insulation & Modernizing Corp.* v. *Lynn,* 331 Mass. 560, 565 (1954). In *Bartlett* v. *Board of Appeals of Lakeville,* 23 Mass. App. Ct. 664, 669 (1987), however, we rejected the notion that the phrase "not used for a period of two years or more" in § 6 was the legal equivalent of abandonment requiring a voluntary and intentional relinquishment of the use. In that case we concluded that a municipality now has two choices for terminating nonconforming uses, one being abandonment and the other a simple cessation of a nonconforming use for a period of at least two years. *Ibid.* This conclusion is supported by the legislative history of § 6. As part of the 1975 Zoning Act, it traces its origins to the Report of the Department of Community Affairs Relative to Proposed Changes and Additions to the Zoning Enabling Act, 1972 House Doc. No. 5009. See *Emond* v. *Board of Appeals of Uxbridge,* 27 Mass. App. Ct. 630, 634 (1989). The report states that "[t]he Department believes that communities should be empowered to prohibit the resumption of non-conforming uses after a specified period of non-use without respect to any 'intent to abandon.' The Department recommends the modification of the current language so as to evidence a legislative intent to that effect." 1972 House Doc. No. 5009, at 45.

Here, the revised zoning by-law of Provincetown was adopted after the enactment of § 6. The language of art. II,

§ 2130, of the by-law tracks the cognate provision of the statute. Accordingly, we conclude that the judge was correct in concluding that the term "discontinued" was not the legal equivalent of "abandonment" and that the simple cessation of an existing, nonconforming use for two years or more would result in the extinguishment of the nonconforming use. *Bartlett* v. *Board of Appeals of Lakeville*, 23 Mass. App. Ct. at 668-670. Compare *Derby Refining Co.* v. *Chelsea*, 407 Mass. 703, 708-711 (1990), where the issue was whether a preexisting *conforming* use had ceased to exist through its abandonment at the time of notice of an amendment of a zoning by-law prohibiting its use and, thus, could continue as a valid nonconforming use.

2. *Loss of protected nonconforming status.* To preserve the protection afforded a preexisting, nonconforming use under G. L. c. 40A, § 6, any subsequent use of the property must not constitute a "change or substantial extension" of the nonconforming use. *Ibid.* Applying the three-part test set forth in *Bridgewater* v. *Chuckran*, 351 Mass. 20, 23 (1966),[3] the judge concluded that a substantial change in the nonconforming use of the property had occurred during the seven and one-half years of ownership of the property by Nauset. We conclude that the judge was warranted in reaching this conclusion from the evidence presented.

The evidence showed that during Nauset's ownership the property was used primarily to operate its fishing business and to garage and repair trucks used for hauling fish. While there was evidence that Nauset continued to store fuel in the two tanks on the premises and to make deliveries to its fishing vessels, out-of-town fishing boats, and a few homes of its employees, neighboring property owners testified that they never saw any fuel oil trucks enter or leave the premises. The town's building inspector also testified that on his numerous visits to the property from 1985 to 1987, he never saw any evidence that the property was being used as a fuel storage and distribution facility. Accordingly, the judge's conclusion

---

[3]The three tests are as follows: "(1) Whether the use reflects the 'nature and purpose' of the use prevailing when the zoning by-law took effect. (2) Whether there is a difference in the quality or character, as well as the degree, of use. (3) Whether the current use is 'different in kind in its effect on the neighborhood.'" *Bridgewater* v. *Chuckran*, 351 Mass. at 23.

that the plaintiff failed to sustain its burden of proving that Nauset's use of the premises did not constitute a change in the use of the premises was not clearly erroneous. *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205, 216 (1982).

*Judgment affirmed.*