Fecteau, J.
At issue in this case is a claim by the City of Gardner (herein “Gardner”) that Bernice Harty, the sole proprietor of Affordable Rentals of Gardner (“Harty”) has unlawfully changed or extended a prior non-conforming use of the premises located at 248 Parker Street, Gardner, to the substantial detriment of the surrounding neighborhood. Harty contends that she is merely continuing the prior use without any change in the kind or degree of use of the premises, such use being protected under G.L.c. 40A, Sec. 6.
The building and zoning enforcement officer issued a “cease-and-desist” order on April 8, 1999, which was later affirmed by the city Zoning Board of Appeals. Harty seeks judicial review and annulment of that order (docket no. 99-01576), pursuant to G.L.c. 40A, Sec. 17, and Gardner seeks an order of enforcement, including an injunction, ordering compliance with that cease and desist order (no. 00-00156) pursuant to Sec. 7 thereof.
The parties were first before the court on February 4, 2000, on the application by Gardner for a preliminary injunction. The court ordered a consolidation with a trial on the merits and that such trial would occur on February 23, 2000. On said date the parties appeared and trial was conducted before me, sitting without jury. Upon consideration of the credible evidence, I make the following findings of fact and rulings of law.
*460 FINDINGS OF FACT
1. The premises located at 248 Parker St. is a one-story commercial garage, of cement block construction with a wooden roof, and with a building area of approximately 45 feet by 80 feet, and an area outside the building available for off-street parking of vehicles. It has been owned since 1978 by Ralph Langden. He bought the premises from a business then known and operating as Gardner Tire Company, a retail tire dealer that also performed general automotive repair work. The building has four “service bays,” each with access by an overhead door. There are two motor vehicle lifts in the building. The premises are located at the intersection with Marquette Street. The neighborhood is predominantly residential.
2. Harty began to operate Affordable Rentals at 248 Parker St., Gardner, on or about September 30, 1997. She began conducting business as a car rental agency, and sought a building permit for construction of an office and for permission to park eleven vehicles on the premises. Permission was granted by the Gardner zoning administrator for this use as being a permitted use within the zone, deeming it sufficiently similar to a “commercial parking lot or parking garage” under use no. 43, Section IIIA of the current zoning ordinance. Harty rents the entire premises from its owner Ralph Langden, who, currently “rents” back from her one bay in the garage for his continued use for general automotive repair, although she does not charge him any rent. He does not work there full time as he now is employed full-time for the Henry Heywood Hospital, in its boiler room, working 11:00 p.m. to 7:00 a.m. His use of the premises at present is significantly less than in 1995, now averaging approximately 3 days per week.
3. The location of the premises in question is within a zoning district known as “Commercial I,” according to the current Zoning Ordinance of the City of Gardner, as amended. The section governing permitted uses within the zones are listed in section M, a section that was added or revised as of August 1987. The zoning ordinance prohibits use of the premises within this zoning district as a “salesroom for motor vehicles . . . repair garage of motor vehicles” or “auto-body, soldering or welding shop.” There was no evidence offered as to the zoning district or the permitted uses prior to the current ordinance.
4. When Langden took over the premises from Gardner Tire, he continued the retail sales of tires as well as general automotive repair and the state vehicle inspection. During the years from 1978, he decreased the sale of tires and began the sale of used cars, increasing sales to the point where, in 1994 or 1995, his primary use of the premises was the sale of used cars. As there was no evidence offered as to the zoning district or the uses permitted prior to the current ordinance, I can only infer, and, therefore, so infer that the sale of used motor vehicles was a permitted use at the time that Langden began to sell vehicles. Incidental to that primary use was a continued use of the premises for general automotive repair, both on the vehicles he offered for sale and for other customers of his repair business.
5. In April 1995, Langden lost his right to renew his Class 2 motor vehicle dealer’s license. He continued his use of the premises for general automotive repair and had to build up that end of the business. Although he had done some automobile body work, it was neither customary nor frequent and was solely related to vehicles that he had purchased for resale. He did not purchase salvage vehicles for reconstruction and resale, although he did purchase vehicles at the Concord auto auction for resale. There is no evidence that he ever owned or used any vehicle carrier or tow-truck. I infer that he did not own or use any tow-truck or flatbed truck to bring vehicles to his lot.
6. Langden occasionally employed auto mechanics, but never more them one at any given time. He occasionally rented one bay to a third party for that party’s use in the service and repair of motor vehicles, but never more than one at any one time.
7. Langden’s usual hours of operation were from 8:00 am to 9:00 or 10:00 pm. Although he usually used all available bays for different types of automotive service and repair, all four bays were rarely, if ever, utilized by four different mechanics at the same time.
8. In May 1998, Harty left her full-time employ with a retailer of general merchandise and began to work full-time at Affordable. During 1998, she was granted a Class 2 motor vehicle dealer license by the licensing authority, which, in the City of Gardner, was the city council. She sold her first used vehicle in mid-1998.
9. Until her Class 2 license was revoked in April 1999, Harty sold in excess of one hundred and forty used vehicles from the premises in question. She presently owns or leases property in Athol from which she continues to sell vehicles. She acquires salvage vehicles which must be transported by vehicle carrier as they are not “driveable,” due either to damage sustained in accidents or that they are unregistered. She brings them to the premises where they are reconstructed or stripped for parts to reconstruct other vehicles. These vehicles being rebuilt at the premises are then transported to the Athol location for sale. She owns at least one flatbed truck and has leased others. There are presently three flatbed trucks on her lot, all or most currently disabled.
10. She currently employs four to six employees. The premises are operating six to seven days per week and repair work often continues past 10:00 p.m., sometimes even as late as 2:00 a.m. The work being done on the premises, as with any automotive repair or auto-body shop, is necessarily noisy. The loud, sharp or repeated sounds of air-compression wrenches, hammering against metal, dropping of tools *461 on concrete or asphalt surfaces, to name just a few sounds associated with an auto repair facility, are common and generally well known. The noise of a commercial garage is detrimental to a residential neighborhood after 10:00p.m., a time when people are commonly preparing for sleep or actually asleep. That Langden did not keep his shop open after 10:00 p.m. is sufficient evidence to find that for Harty to do so constitutes substantially more detriment to the neighborhood.
11. There are often as many as 30 vehicles on the lot and sometimes as many as 40. Vehicles having a connection with the premises are often parked along the public streets, sometimes creating a dangerous condition at the intersection of Parker and Marquette Streets, preventing motorists on Marquette from being able to see down Parker. There is at least one other business in the vicinity, a beauty salon, that is responsible for attracting vehicles to the neighborhood, as well as the vehicles belonging to residents of the neighborhood, some of which live in a 6-family apartment building next door to the premises. Langden said that he often had as many as 30 vehicles on site and sometimes as many as 40, but did not say that his need for space on-site ever spilled out onto the public streets.
12. The average volume of business that Harty is currently doing at the premises is significantly more than Langden ever did. There was no evidence offered, however, as to the percentage of Harty’s business that is reconstruction of salvage vehicles purchased by her compared to the percentage of business that is general automotive repair of vehicles owned by others. There was, however, testimony from the zoning administrator and the police department motor, vehicle dealers’ license inspector that many of the vehicles on the lot at the time of their inspections were unregistered and there were many vehicles on the premises with major body parts missing and that there were motors, transmissions and major body parts present lying about the premises. I infer from this and other evidence that a significant part of the business conducted on the premises consists of the rebuilding of salvage vehicles. The defendant offered no evidence to the effect that this rebuilding or remodeling activity was being conducted on vehicles that were owned by anyone other than the defendant.
RULINGS OF LAW
At issue in the case at bar is whether the use by Bernice Harty, doing business as Affordable Rentals of Gardner, of the premises located at 248 Parker Street in Gardner, other than for an automobile rental business, constitutes a change or substantial extension of a prior, non-conforming use. There is no question that her use of the property, like that of her predecessor Ralph Langden, does not conform to the present zoning ordinance of the City of Gardner, with the exception of her rental car business, the only business that she brought to the attention of the zoning enforcement officer of the city.
Harty seeks, inher civil action, no. 99-01576, to annul the decision of the Zoning Board of Appeals that affirmed the cease and desist order issued by the zoning enforcement officer. She contends that her use of the premises is permitted as merely a continuation, in kind and degree, of the pre-existing, non-conforming use. The City of Gardner seeks, in its case, no. 00-00156, to enforce the cease and desist order, contending that Harty’s use of the premises is either a change or a substantial extension of the prior non-conforming use.
G.L.c. 40A, Sec. 6 provides, in pertinent part:
Except as hereinafter provided, a zoning ordinance . . . shall not apply to . . . uses lawfully in existence . . . , but shall apply to any change or substantial extension of such use . . . Pre-existing non-conforming . . . uses may be extended or altered, provided that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance . . . that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood.
The Ordinances of the City of Gardner contain a similar provision: “a non-conforming use may be changed to any similar use which is not substantially different in character or more detrimental or injurious to the immediate neighborhood.” Ordinance No. 62, V-C, 4. Elsewhere it states that “no non-conforming extension or alteration of a non-conforming use shall be permitted unless there is a finding by the Board of Appeals that such change, extension or alteration shall not be substantially more detrimental than the existing non-conforming use to the neighborhood.” Id., at V-C, 2.
There is a three-part test to determine whether there has been a “change” or a “substantial extension”: (1) whether the current use reflects the nature and purpose of the prior use; (2) whether there is a difference in the quality or character, as well as degree, of use; and (3) whether the current use is different in kind in its effect on the neighborhood. Bridgewater v. Chuckran, 351 Mass. 20, 23 (1966). The property or business owner has the burden to show that the current use is sufficiently similar to the prior, lawful non-conforming use. Bridgewater, supra, at 24.
Although the question of what activities may come under the regulatory provisions of the motor vehicle dealer licensing laws is not determinative of the issue herein, the activities that would require a license under one class or another may be informative as to whether there has been changes or extensions in the purpose, nature and quality of the business conducted by Langden and Harty.
G.L.c. 140, Sec. 57 provides, in pertinent part, as follows: “No person, except one whose principal busi *462 ness is the manufacture and sale of new motor vehicles . . . shall engage in the business of buying, selling, exchanging or assembling second hand motor vehicles or parts thereof . . . without securing a license as provided in section 59,” said section explaining the application process.
Section 58 classifies motor vehicle dealers licenses into three classes. Class 1 is essentially a new motor vehicle sales class, class 2 is for second hand motor vehicles and class 3 for those “whose principal business is the buying of second hand motor vehicles for the purpose of remodeling, taking apart or rebuilding and selling the same, or the buying or selling of parts of second hand motor vehicles or tires, or the assembling of second hand motor vehicle parts.”
Both Langden and Harty were, at one time, the holders of a class 2 license, and, without going into whether Langden’s loss of his right to renew coupled with a failure on his part to take any steps to remove the obstacles to renewal constitutes an abandonment of the use of the premises for second hand motor vehicle sales, Harty lost her class 2 license and, therefore, her right to sell used cars from these premises.[1] More significantly, however, Langden never had a class 3 license. Nor did he conduct any business that could conceivably be considered as coming within class 3. The same cannot be said of Harty.
Whether one considers the used motor vehicle repair and sales activity conducted by her on the premises between May 1998 and April 1999, or the sales activity conducted by her off-site in Athol of vehicles that are bought and transported to and rebuilt on the premises in question, she is and has been conducting a business that is, for all intents and purposes and, as a practical matter, a class 3 operation. Moreover, it makes little or no difference to the analysis that the salles of these rebuilt vehicles takes place off-site, since the statute prohibits the buying, and rebuilding of such vehicles as well as sale, without a license.
Therefore, when the Bridgewater v. Chuckran test is applied, it becomes clear that the current use does not reflect the “nature and purpose of the use prevailing when the zoning law took effect,” that there is a “difference in the quality or character, as well as degree, of use” and that the current use is “different in kind in its effect on the neighborhood.” Harty’s use of the premises for the rebuilding of salvage vehicles for sale is a change from the prior use and is, therefore, unlawful. As the premises have never been used lawfully as an “autobody, soldering or welding shop,” such use is not a prior existing, nonconforming use and, therefore, any such use is in violation of the zoning ordinance and is unlawful. Therefore, Harty’s current use of the premises with respect to the buying and/or rebuilding of salvage vehicles, or with respect to any other activities normally associated with the operation of a facility licensed under G.L.c. 140, Sec. 58, Class 3, is barred. To the extent that the cease and desist order issued by the zoning enforcement officer and, thereafter, affirmed by the zoning board of appeals, orders her to cease and desist from any and all activities related to a class 3 dealers license including the purchase and remodeling and/or rebuilding of said vehicles, and orders her to cease and desist from activities related to autobody, soldering or welding, said decision is affirmed.
Moreover, since there was no evidence that Langden ever conducted any activities or business on the premises after 10:00 p.m., Harty’s conduct of any business on the premises after 10:00 p.m. is an extension of the pre-existing use to the substantial detriment of the surrounding neighborhood and is, therefore, unlawful. Therefore, to the extent that the decision of the board affirms the zoning officer’s order to her to cease and desist from the conduct of any business or activities after 10:00 p.m., the decision is affirmed.
A closer question is presented, however, with regard to general automotive repair activities conducted by her on the premises, upon vehicles registered to others, and, in particular to a comparison of the volume of business conducted by her on the premises to an average volume of business conducted by Langden in 1997. When Harty took control of the premises in 1997, notwithstanding that he had ceased to sell used cars, Langden had continued to use the premises for a general automotive repair garage. Harty began business as a rental car agency. Assuming that she had the right to begin second hand motor vehicle sales in 1998 and that such a use had not been abandoned, she maintained the right to continue to use the premises for general automotive repair, at least in connection with her rental agency, the reconditioning and repair of vehicles bought and sold by her in connection with the class 2 license and general automotive repair ofvehicles owned by others. Therefore, some use of the premises by Hariy for general automotive repair is and shall be permitted. The use is not personal to Langden but runs with the land. Revere v. Rowe Contracting Co., 362 Mass. 884, 885 (1972). Harty has essentially changed position with Langden: he has become, in turn, a tenant of hers in the use of one service bay, as he had done with others while he was in control of the premises. Notwithstanding her unlawful use of the premises, so long as the premises can be used lawfully, she may do so. However, it is unclear whether she has extended the lawful use of the premises for general automotive repair, in degree, beyond that permitted by law.
A zoning by-law or ordinance cannot prevent a landowner from doing a much greater business of the same sort without change in the plant. A nonconforming use may not only be continued but also increased in size. Cochran v. Roemer, 287 Mass. 500, 508 (1934). But a small existing nonconforming business cannot be so enlarged as to be different in kind in its effect upon the neighborhood. “The distinction is between an increase in the amount of business, even a great increase, which does not work a change in use, and an enlarge *463 ment of a nonconforming business so as to be different in kind in its effect on the neighborhood.” Medford v. Marinucci Bros. & Co., Inc., 344 Mass. 50, 60 (1962).
It is difficult, upon this record, to discern whether the business activities that Harty is carrying on and that is viewed herein as “class 3" business that shall be prohibited by this decision and order accounts for the late-hour noise and substantial increase in the volume of vehicles in the surrounding neighborhood. If so, then her activities that relate to general automotive repair of vehicles belonging to others may well conform to prior levels of business and without substantial detriment to the neighborhood.
Consequently, the court makes no rulings with regard to the balance of the issue, without prejudice to further investigation and enforcement activities of the City of Gardner following passage of sufficient time for Harty to come into compliance with the dictates and orders herein to permit both parties to determine whether there continues to be an extension of use beyond that allowed by law and which is substantially more detrimental to the surrounding neighborhood.
ORDERS FOR JUDGMENTS
In connection with civil action no. 99-01576, a judgment shall enter that AFFIRMS, in part, and ANNULS, in part, the decision of the Zoning Board of Appeals of the City of Gardner. The decision is affirmed to the extent that it orders Bernice Harty, her agents, servants and employees, to cease and desist from any and all activities conducted at 248 Parker St. that are related to a “class 3,” license under G.L.c. 140, Sec. 58, including the buying, repairing, rebuilding, or remodeling of salvage motor vehicles, including auto-body, soldering or welding. The decision of the board is further affirmed to the extent that it orders her, her agents, servants and employees, to cease and desist from the conduct of any activities not in conformity with the Zoning Ordinance of the City of Gardner currently in effect including general automotive repair at the said premises between the hours of 10:00 p.m. and 8:00 a.m. The decision of the board is annulled to the extent that it orders her, her agents, servants and employees, to cease and desist from the existing, nonconforming use for general automotive repair of motor vehicles registered and owned by others, and of vehicles personally owned and registered to her, her agents, servants and employees that are not intended for sale, between the hours of 8:00 a.m. and 10:00 p.m.
In connection with civil action no. 00-00156, a judgment shall enter in the nature of a permanent injunction that enjoins and prohibits Bernice Harty, her agents, servants and employees, and her heirs and assigns, from (1) any activities conducted at 248 Parker St. that are related to those described in “class 3,” G.L.c. 140, Sec. 58, including the buying, repairing, rebuilding or remodeling of salvage motor vehicles, (2) related to an autobody, soldering or welding shop, and (3) from any activities not in conformity with the Zoning Ordinance of the City of Gardner currently in effect including general automotive repair at the said premises between the hours of 10:00 p.m. and 8:00 a.m.

Even though Harty had to apply to the city council to obtain her class 2 license, she apparently did not present her intentions to sell used cars to the zoning administrator. Had she done so, the question of the abandonment or discontinuance of the “car sales” use by Langden could have been decided. In any event, that issue appears to be moot.